**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA**

**CASE NO. 14-20209-CR-ALTONAGA**

**UNITED STATES OF AMERICA**

vs.

**ANDREA MARROQUIN,**

    **Defendant.**

_____/

**GOVERNMENT'S SENTENCING MEMORANDUM
RE: OFFENSE CONDUCT FOR PSI**

    The United States is submitting this Memorandum in order to provide a more complete picture of the relevant offense conduct and background of defendant ANDREA MARROQUIN. The PSI Report submitted by the Probation Office mostly repeats the offense conduct description prepared for the PSI of co-defendant Orlando Sanchez, with a few additional facts about defendant MARROQUIN added in. However, the Sanchez PSI was prepared before defendant MARROQUIN had even been extradited, was focused on him, and contained limited information particular to her. This Memorandum is intended to supplement the MARROQUIN PSI with relevant factual information focusing on her background and offense conduct. It is not intended to be argument.

    This case involved a major drug trafficker (co-defendant Jose Orlando Sanchez), ANDREA MARROQUIN, who is the daughter of deceased trafficker Edgar Marroquin, and some of their associates, in offenses of money laundering and mortgage frauds. ANDREA MARROQUIN's father Edgar Marroquin was a major Colombian trafficker. He was murdered in 2001. ANDREA thereupon acquired millions of dollars he had made dealing

cocaine. Beginning around 2003, she began transferring funds from Colombia to the United States and embarked on a plan of real estate acquisitions in South Florida, where she was living. Much of this criminal activity was carried out in concert with co-defendant Jose Orlando Sanchez, with whom she had a romantic relationship for a period of time; some with other participants, and some largely by herself. Most of her purchases were of condominium units, but some involved houses and also undeveloped lots.

The funds used for the down payments on real estate purchases identified herein were originally derived from drug trafficking. Besides laundering her drug proceeds, the property purchases provided means for MARROQUIN to make additional money by perpetrating mortgage frauds. These frauds entailed obtaining loans by misrepresenting her employment and income and/or by using straw buyers. The defendant was thereby able to leverage the drug proceeds she used for down payments into additional profits obtained from mortgage loans, through schemes she devised to avoid having to repay the loans. All the mortgage frauds charged in the indictment involved substantial losses to lending institutions.

In furtherance of her schemes, MARROQUIN established approximately 48 corporations and limited liability companies (LLCs) in Florida, none of which had any discernible legitimate economic purpose. Her most-used corporation, Quin Real Estate Investments, was located at a postal box in a UPS store. Through her own name, her alias ANDREA REYES, and her corporations, she bought numerous parcels of real estate (approximately a dozen), including condominiums, houses and lots. Some were apparently bought with cash, often routed through third party accounts to conceal its origin. Others were bought with large mortgage loans. None of her loan applications were truthful in their statements about her income and employment. In her loan applications, MARROQUIN

2

seldom listed the same employment or income between one application and the next. She defaulted on a number of the fraudulently obtained loans, as further described below.

## COUNT 1
### (Fraud Conspiracy)

The conspiracy count describes the three general means by which all the defendants engaged in mortgage frauds. One was to sell property they owned to straw buyers at inflated prices, with the purchase money coming from falsified mortgage loan applications. A second was to claim inability to make mortgage payments on property they owned, and obtain approval for short sales to accomplices, after which they kept using the premises (but without any more mortgage debt). The third method involved buying property with mortgage loans, which they would not have been given if they had provided truthful information on their loan applications as to their employment and finances.

The substantive counts charging specific frauds adopt by reference the applicable *modus operandi* described in the conspiracy count, and list acts taken in furtherance of each particular scheme. All of the charged substantive counts are encompassed within the conspiracy count.

One of the earliest frauds involved **Unit 501 at 18683 Collins Avenue,** which is specified in the conspiracy count. Defendants Luis Reyes and MARROQUIN, who were married at the time, bought this unit in 2005. In 2006, Reyes refinanced it with a $452,000 loan obtained through a completely false loan application. Nine months later, MARROQUIN and Reyes sold the apartment, on paper, to now-cooperating accomplice, Alessandra Duffey. The purchase price was $810,000 financed by a mortgage loan for approximately 90% of the total.

Duffey was an acquaintance of MARROQUIN and also worked for her in a

secretarial-type job. MARROQUIN recruited her to participate in the fraudulent mortgage loan application by promising her a share of the profits when they re-sold the unit. MARROQUIN, assisted by Reyes, arranged for Duffey to borrow $730,000 to support this purchase, using fraudulent loan applications misrepresenting her income, employment, and intent to occupy the unit as her residence. MARROQUIN prepared the application, which asserted that Duffey earned $20,000 a month as a trading broker. In fact, Duffey worked as a secretary for $2800 a month. Duffey supposedly provided the cash down payment of $78,000 from her own funds, but in fact, that money came directly from MARROQUIN's bank account.

The proceeds from their "sale" to Duffey paid off MARROQUIN and Reyes' existing loan and gave them cash to spare.

Duffey never occupied or used the apartment at all. Reyes and MARROQUIN retained control of it. Initially MARROQUIN provided Duffey with money to make the mortgage payments, but around October 2008, she stopped doing so. Duffey had no money to pay the loan and the lender, Credit Suisse Financial, authorized a short sale. By pre-arrangement, she sold the unit back to MARROQUIN. MARROQUIN thereby arranged a flip-flop that put the property back in her own name, with the mortgage paid off and the surplus cash in her and Reyes' pockets. Credit Suisse lost about $150,000 on the deal. Duffey, meantime, had her formerly good credit rating ruined for years as a result of her default.

MARROQUIN divorced Reyes during the time period of this fraud, and he had no further participation in her schemes. She became romantically involved with Orlando Sanchez during the course of their conspiracy. Subsequently a real estate agent who knew

both MARROQUIN and Sanchez introduced the two of them to Jose Ganen, who was one of her clients. The three of them agreed that Ganen would sell them three properties (two condos and a house) he owned in Miami in exchange for two properties they owned in Colombia. MARROQUIN bought one condo (Unit 703) and a house in Miramar, and Sanchez bought the other condo (Unit 403). Both were purchased through fraudulent loan transactions, described below. During their various fraudulent transactions, money moved back and forth between MARROQUIN and Sanchez, and Sanchez often claimed employment at one of MARROQUIN's shell companies in his fraudulent loan applications.

## COUNT 4
### (Bank Fraud)

**UNIT 511, 19900 EAST COUNTY CLUB DRIVE, AVENTURA, FLORIDA:**

Orlando Sanchez purchased this unit for $650,000 in March, 2007, with a mortgage loan of $455,000 from Countrywide Bank and a $195,000 down payment that was supposed to be his own money.

The HUD-1 settlement claimed that Sanchez was providing about $25,000 in cash to the closing. In reality, as revealed by the account records of the closing agent, Weston Professional Title Corp., this money was supplied by Andrea MARROQUIN through two of her corporations.

In his application for the $455,000 loan, Sanchez claimed to be employed as the marketing director for MARROQUIN's company, Quin Real Estate, for $17,500 a month. The loan application also asserts that Sanchez had $250,000 in a specified account at the Bank of America. These representations were obviously material to Countrywide's decision to issue the loan, as they showed that Sanchez had legitimate resources with which to repay

5

the loan.

In reality, Sanchez did not have the account he identified, nor any other account holding anything near that amount of money at that time. Moreover, Quin Real Estate was a shell corporation that did no actual business and had no regular employees. Paola Wagener, a real estate agent employed as an assistant to MARROQUIN in many fraudulent activities, confirmed that she had falsely verified Sanchez's supposed employment at Quin Real Estate on a number of occasions, at MARROQUIN's direction, to facilitate fraudulent mortgage loans.

In August 2008, about a year and a half after the purchase, Sanchez quit making payments on the loan, and a Lis Pendens was filed. In December 2010, a short sale was completed to an independent buyer, resulting in loss to Bank of America (successor to Countrywide) of $106,000.

## COUNT 5
## (Bank Fraud)

### UNIT 703, 3201 NE 183RD STREET, AVENTURA, FLORIDA:

In October 2004, defendant ANDREA MARROQUIN bought Unit 703 through one of her corporations, Quin Real Estate, for $800,000 in cash. The purchase money in the form of wire transfers and checks was funneled through attorney Santiago Eljaiek's trust account and came from six different sources - none of them having an interest in the property. Those included Angel Roman, William Sanchez, Diana Pinzon and Jhon Ocampo, who are relatives or associates of Orlando Sanchez, Rosa Casas Ortiz (a Colombian attorney), Jorge Cristancho (brother of Orlando Sanchez), Compucol Exports Corp. (a business used by MARROQUIN and Sanchez, and incorporated by Sanchez's daughter), and Astrocom Corporation. Astrocom, further described below, was the company used by

6

Diego Castro very for large-scale money laundering.

Such transfers of funds from multiple uninvolved sources are direct indications of money laundering. The balance was financed with a mortgage loan obtained based on an assertion that MARROQUIN was providing the down payment.  The lender would not have extended the loan if it had been informed that the down payment was being fronted by six other people and entities from unknown sources.

In April, 2007, MARROQUIN took out a home equity loan secured by the condominium unit for $915,000, which she used to pay off some prior loans.  The $915,000 loan was sold to Wells Fargo Bank and was serviced by EMC Corp.  Around July 2009, MARROQUIN stopped paying the mortgage, and EMC notified her of an impending foreclosure action.

MARROQUIN, recruited Yosi Gil, her new boyfriend, to assist her as she embarked on another aspect of her scheme.  She decided to obtain authorization for a short sale of the property to Yosi Gil, for $650,000.  To obtain approval for the short sale, MARROQUIN had to demonstrate hardship to the mortgage holder. She claimed that Quin Real Estate, which held title, had no money and no assets and could not continue with the mortgage payments. She omitted any mention of her own assets. In the HUD-I settlement form submitted to the mortgage holder, Yosi Gil asserted that his own company, Gil Family Investments, was going to purchase the unit for cash.  EMC authorized the short sale based on these representations.

However, the purchase money was not from Gil.  It came from the following sources (routed through attorney Santiago Eljaiek's trust account): ANDREA MARROQUIN directly paid $60,000, a Panamanian shell corporation controlled by MARROQUIN (Grupo Empresarial Continental) provided $550,000 (Grupo Empresarial lists an address in Panama

7

on the 8th floor of a building that a DEA agent has observed to have only 7 stories), and $70,000 came through attorney Jose Marrero's company, Weston Professional Title. According to Marrero, that $70,000 was also provided by MARROQUIN.

The short sale was authorized by EMC on behalf of Wells Fargo and took place in March, 2010. After various costs and expenses, the lender took a loss of $300,000 from its $915,000 loan. The closing (and the lender's $300,000 loss) took place in March 2010. The short sale itself was a fake transaction. In October 2010, Gil Family Investments, through Gil, quitclaimed the property to a corporation, Peninsula 703. The sole corporate officer of Peninsula 703 was Ruth Bohorquez, MARROQUIN's sister. Her address in the corporate filing is Unit 703. MARROQUIN continued to use the apartment as if it were her own. Her Florida driver's license lists Unit 703 as her residence for more than another year, through 2011.

In July, 2011, she offered to sell it to Mordechai Cohen, a previously convicted drug dealer, in exchange for some property he owned in Colombia and some cash. Cohen made the deal and control of Peninsula 703 was simply transferred to Itzhah Cohen, Mordechai's brother. This gave him control and effective ownership of the property. Cohen has said all his dealings were with MARROQUIN, and she received the consideration for the sale. Cohen states that he had no contact with Gil about this unit.

The end result of this series of transactions is that MARROQUIN, aided by Gil, arranged a short sale of mortgaged property back to herself, with $300,000 of the mortgage lien eliminated. The lenders have confirmed the obvious, that they would not have allowed the short sale if they knew that MARROQUIN had the $650,000 she provided to Gil to make the straw purchase after claiming no money or assets to continue making her mortgage

8

payments.

## COUNTS 6-7
### (Promotional Money Laundering)

While these counts are not being used to compute the applicable Guideline range, they are a part of the *modus operandi* of the bank fraud. In order to fund Yosi Gil's straw purchase of Unit 703, MARROQUIN had to provide him with cash to cover the required partial payoff of the mortgage loan, by a means not readily traceable back to her.

She did so by three wire transfers, one on Sept. 21, 2009 for just under $50,000, one on March 3, 2010 for just under $200,000, and another on March 9, 2010, for just under $300,000, sent to Santiago Eljaiek's trust account. The money came from a Panamanian account belonging to Grupo Empresarial Continental. This is a shell corporation whose managing director and principle corporate officer is listed in official records as ANDREA MARROQUIN. She also signed some documents relating to this transaction as the manager of the corporation. However, the lending institution would at most know that its loan was being financed by a Panamanian corporation, through Yosi Gil, and would not see MARROQUIN's involvement unless they decided to investigate it (which they saw no reason to do, since the money was good).

Hence, MARROQUIN used these wire transfers to finance a short sale to herself while concealing her financial involvement.

## COUNT 8
### (Money Laundering Conspiracy)

The last count charges Sanchez and MARROQUIN with a long-term money laundering

conspiracy in violation of 18 U.S.C. §1957.  The start date in 2003 is when Sanchez got out of prison; his illegal financial activities began soon after.

In essence, nearly all of the money either defendant has ever had was originally derived from drug trafficking. That money was used to buy real estate, including for down payments on property bought with fraudulently obtained mortgage loans. In some cases, those loan proceeds were used to pay off previous loans or loans on other properties.

MARROQUIN is a United States citizen who established numerous corporations in Florida.  Sanchez was a previously convicted money launderer and drug trafficker who had no real financial footprint in the United States. He, like MARROQUIN, also formed numerous shell corporations to use for real estate purchases and as a means to launder his drug money. Sanchez sometimes used MARROQUIN's accounts to launder money he was using to make the purchases of real estate. In some of the transactions, money from MARROQUIN's accounts was routed through other entities or individuals to provide deposit or cost money for Sanchez's purchases.

Diego Castro was a professional money launderer who knew Sanchez when he was still in Colombia. Castro also was acquainted with Edgar Marroquin and was familiar with his position as a major trafficker.  Castro was known as one of the principle money launderers for the drug traffickers of the Cali Cartel.  He established a company in the United States, called "Astrocom", which ostensibly was in the telephone card business. Although it did have some legitimate business, its principle function was to launder money, for a fee.

When they were all in Miami, Sanchez introduced MARROQUIN to Castro as his partner in moving money into the United States to invest in real estate.  Castro received their money in Colombia and moved it to the United States.  From his accounts here, he made

payments to the various persons and entities involved in their real estate purchases – title companies, mortgage brokers, banks, and attorneys, to provide the cash she needed for her transactions. Much of the money was routed through other corporations, to keep both Sanchez's and MARROQUIN's names off the record.

Money traceable to concealing transfers from Colombia attributable to MARROQUIN totals close to one and a half million dollars.

        Respectfully submitted,

        ARIANA FAJARDO ORSHAN
        UNITED STATES ATTORNEY

        By:  /s/ Frank H. Tamen
             Frank H. Tamen
             Assistant United States Attorney
             Florida Bar No. 261289
             99 Northeast 4th Street
             Miami, Florida 33132-2111
             Tel: (305) 961-9022
             Fax: (305) 536-7213

## **CERTIFICATE OF SERVICE**

**I HEREBY CERTIFY** that on this 26th day of September, 2019, I electronically filed the foregoing document **Government's Sentencing Memorandum** with the Clerk of the Court using CM/ECF.

        By:  /s/ Frank H. Tamen
             Frank H. Tamen
             Assistant United States Attorney